Shannon M. Jost (NYSBA #2848844)
Stokes Lawrence, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, WA  98101
Tel.: (206) 626-6000
Fax:  (206) 464-1496

Attorneys for Defendant Attachmate Corporation

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAKS INCORPORATED,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ATTACHMATE CORPORATION,<br><br>　　　　　Defendant. | Case No.:  14 CV 4902 CM<br><br>ATTACHMATE'S ANSWER, AFFIRMATIVE AND OTHER DEFENSES, AND COUNTERCLAIMS |

　　　Defendant Attachmate Corporation ("Attachmate") provides its answers and affirmative and other defenses to the Complaint and Demand for Jury Trial, and provides its Counterclaims against Saks Incorporated ("Saks") as follows:

**ANSWER**

　　　1.　　Attachmate admits that Saks purports to allege an action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202.  Attachmate additionally states that Saks has not asserted a copyright infringement cause of action.  Except as explicitly stated, Attachmate denies the allegations contained in Paragraph 1 of the Complaint.

**THE PARTIES**

2.      Attachmate lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 2 and therefore denies them.

3.      Attachmate admits that it is a corporation organized under the laws of Washington State, with its principal place of business at 705 5th Avenue South, Seattle, WA 98104, and that Attachmate licenses a variety of software products.  Except as explicitly stated, Attachmate denies the allegations in Paragraph 3.

**JURISDICTION AND VENUE**

4.      Attachmate admits that Saks purports to allege an action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202.  Attachmate additionally states that Saks has not asserted a copyright infringement cause of action.  Except as explicitly stated, Attachmate denies the allegations in Paragraph 4.

5.      Attachmate admits that this Court has subject matter jurisdiction over these claims pursuant to the Declaratory Judgment Act, that Saks purports to allege that Saks has not breached a contract between Saks and Attachmate, that Saks purports to allege that Attachmate has breached a contract between Saks and Attachmate, and that this action is between citizens of different states.  Attachmate additionally states that Saks has not asserted a copyright infringement cause of action.  Attachmate lacks sufficient knowledge or information about Saks' purported damages to form a belief about the truth of the allegations regarding 28 U.S.C. § 1332 and therefore denies them.  Except as specifically stated, Attachmate denies the allegations in Paragraph 5.

6.      Attachmate admits that, if the Court has jurisdiction, venue in this Court is proper.  Attachmate further admits that it maintains an office in the State of New York, and is registered to conduct business in New York.  Except as specifically admitted, Attachmate denies the allegations in Paragraph 6.

**FACTUAL BACKGROUND**

7. Attachmate admits that Saks operates Saks Fifth Avenue retail stores and at least one website. Except as specifically stated, Attachmate lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 7 and on that basis denies them.

8. Attachmate admits that it licenses various software products, including without limitation various EXTRA! and EXTRA! X-treme software products, as well as various KEA! X software products. Except as specifically stated, Attachmate denies the allegations in Paragraph 8.

9. Attachmate admits that over the years Saks has purchased licenses for various Attachmate software products, including without limitation certain software products within the EXTRA!, KEA! and Reflection product families. Attachmate further admits that over the years Saks has purchased per-device licenses to the EXTRA! Mainframe Server Edition software product versions 8.0 and 8.1, the KEA! X software product, and one or more Reflection software products. Except as specifically stated, Attachmate denies the allegations in Paragraph 9.

10. Attachmate admits that at times it uses a click-wrap or click-through license model, whereby the terms of the license are accepted by the user of the software at the time of installation or download. Attachmate further states that it has also used a shrinkwrap license model. Except as specifically stated, Attachmate denies the allegations in Paragraph 10.

11. Attachmate lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 11 and on that basis denies them.

12. Attachmate denies the allegations in Paragraph 12. Attachmate further states that the EXTRA! Software Product was provided to Saks with the applicable software license agreement, and further that the installation process for the EXTRA! Software Product, as acquired and installed by Saks, presents and requires that a user Accept that he or she has read and agrees to the terms of the applicable software license agreement.

13. Attachmate admits the allegations in Paragraph 13. Attachmate further states that although the representative copy of the Attachmate Software License attached as Exhibit A to the

Complaint is marked "Sample," the text of the license agreement is the same as the license agreement that was presented to and accepted by Saks.

14. Attachmate admits the allegations in Paragraph 14.

15. Attachmate admits the allegations in Paragraph 15.

16. Attachmate admits the allegations in Paragraph 16.

17. Attachmate lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 17 and therefore denies them.

18. Attachmate lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 18 and therefore denies them.

19. Attachmate admits that the audit commissioned by Attachmate reported that Saks had installed copies of the EXTRA! Mainframe Server Edition Version 8.0 on the hard drives of approximately 1,133 of Saks' computers. Except as specifically stated, Attachmate lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 19 and therefore denies them.

20. Attachmate lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 20 and therefore denies them.

21. Attachmate lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 21 and therefore denies them.

22. Attachmate lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 22 and therefore denies them.

23. Attachmate lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 23 and therefore denies them.

24. Attachmate lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 24 and therefore denies them.

25. Attachmate lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 25 and therefore denies them.

26. Attachmate lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 26 and therefore denies them.

27. Attachmate lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 27 and therefore denies them.

28. Attachmate lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 28 and therefore denies them.

29. Attachmate lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 29 and therefore denies them.

30. Attachmate admits the allegations in Paragraph 30.

31. Attachmate admits that in or around mid-December 2013, Attachmate commissioned Deloitte and Touche, LLP to conduct an audit of Saks' deployment of Attachmate software products. Except as specifically stated, Attachmate denies the allegations in Paragraph 31.

32. Attachmate admits that as a result of Saks' deployment of copies of the Attachmate software products onto Saks' computers and network servers, Saks is bound by the ASLA which requires Saks to purchase licenses for each computer or device on which the Attachmate software is installed, and for each computer or device which has access to Saks' network servers on which Attachmate software is installed. Except as specifically stated, Attachmate denies the allegations in Paragraph 32.

33. Attachmate admits that the audit conducted by Deloitte and Touche, LLP revealed a license discrepancy of 3,640 additional licenses, for which Saks had not paid. Attachmate further admits that Saks had purchased an aggregate total of 2361 licenses for the EXTRA! Mainframe Server Edition versions 8.0 or 8.1 software. Except as specifically stated, Attachmate denies the allegations in Paragraph 33.

34. Attachmate lacks sufficient knowledge or information to form a belief about whether each of the 6,001 unique Saks devices or users revealed by the audit actually accessed, copied, downloaded, used or displayed the EXTRA! Software, and on that basis denies the

allegations in Paragraph 34. Attachmate further denies that actual access to or copying, downloading, use or display of such software is a necessary element of a breach of contract or copyright infringement claim where such devices or users have the ability to access and use, directly or indirectly, the Software from Saks' network server(s).

35. Attachmate admits the allegations in Paragraph 35.

36. Attachmate admits the allegations in Paragraph 36.

37. Attachmate admits that according to the information presently available to Attachmate, Saks must purchase 3,640 additional licenses for the EXTRA! Software Product, and admits that Saks has refused to do so. Except as specifically stated, Attachmate denies the allegations in Paragraph 37.

38. Attachmate admits that the correspondence attached as Exhibit B to the Complaint is an accurate copy of a letter from Attachmate's Senior Corporate Counsel, and avers that the contents of the letter speaks for itself. Except as specifically stated, Attachmate denies the allegations in Paragraph 38.

39. Attachmate admits that Saks offered to purchase additional licenses for the EXTRA! Software, but denies that Saks has offered to purchase enough additional licenses and further denies that Saks has offered to purchase such licenses on acceptable terms. Attachmate lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Saks' offer would "meet Saks' internal business needs" and on that basis denies it. Except as specifically stated, Attachmate denies the allegations in Paragraph 39. Attachmate additionally states that Saks has never offered to fully remedy its breaches of contract.

40. Attachmate admits the allegations in Paragraph 40.

41. Attachmate denies the allegations in Paragraph 41.

42. Attachmate admits that the correspondence attached as Exhibit C to the Complaint is an accurate copy of an email exchange between various Attachmate personnel including Mr. Dilley and representative(s) of Saks, and avers that the contents of the emails

speak for themselves.  Except as specifically stated, Attachmate denies the allegations in Paragraph 42.

43.     Attachmate admits that an Attachmate representative corresponded with a Saks representative via email on June 12, 2014, but denies Saks' characterization of that email exchange.  Except as specifically stated, Attachmate denies the allegations in Paragraph 43.

44.     Attachmate admits that its policy is to require its customers to comply with the terms and requirements of Attachmate's software licenses, and that at times Attachmate requires audits of customers' installation of, access to, and/or use of Attachmate software in order to determine whether a particular customer is in compliance with the terms of the applicable software license agreement(s).  Attachmate further admits that during its three decades of doing business, Attachmate has been forced to initiate litigation against a handful of customers in order to address such customers' noncompliance with Attachmate's applicable software licenses.  Except as specifically stated, Attachmate denies the allegations in Paragraph 44.

45.     Attachmate admits that since 2005 it has been forced to initiate litigation against several customers in order to address such customers' copyright infringement and/or noncompliance with Attachmate's applicable software licenses, and that in such litigation Attachmate has sought appropriate damages based on such companies' copyright infringement and/or noncompliance with the applicable software licenses.  Except as specifically stated, Attachmate denies the allegations in Paragraph 45.

46.     Attachmate admits that Saks purchased software licenses for distinct Attachmate products.  Attachmate admits that in or around December 2013 Attachmate invoked audit rights contained in its contracts with Saks and that a third party (auditors at Deloitte & Touche LLP) conducted an audit of Attachmate software located on Saks' computing systems.  Attachmate admits that the audit revealed Saks had installed and provided thousands of devices with access to the EXTRA! Software without purchasing sufficient licenses.  Attachmate admits that these actions and others infringed Attachmate's copyrights and breached Saks' agreements with Attachmate, and that after several months of efforts by Attachmate to resolve the situation, Saks

still has refused to pay the required license fees, interest and other damages. Except as specifically admitted, Attachmate denies the allegations in Paragraph 46. Attachmate additionally states that Attachmate fully performed all its contractual obligations to Saks, and further that Saks has never offered to fully remedy its breaches of contract.

47. Attachmate denies the allegations in Paragraph 47. Attachmate additionally states that Saks, not Attachmate, breached the Attachmate Software License Agreement.

## FIRST CAUSE OF ACTION

48. Attachmate realleges and incorporates each of its answers to Paragraphs 1 through 47 of the Complaint.

49. Attachmate denies the allegations in Paragraph 49.

50. Attachmate denies the allegations in Paragraph 50.

51. Attachmate denies the allegations in Paragraph 51.

52. Attachmate denies the allegations in Paragraph 52. Attachmate additionally states that Saks has not alleged a cause of action but instead appears to have stated a potential defense to an anticipated cause of action against Saks.

## SECOND CAUSE OF ACTION

53. Attachmate realleges and incorporates each of its answers to Paragraphs 1 through 52 of the Complaint.

54. Attachmate admits that its computer software is protected by copyright and that Attachmate owns copyright registrations for its software. Except as specifically admitted, Attachmate denies the allegations in Paragraph 54.

55. Attachmate admits that the audit revealed Saks had installed and provided thousands of devices with access to software without purchasing licenses. Attachmate admits that these actions and other infringed Attachmate's copyrights and breached Saks' agreements with Attachmate, and that after several months of efforts by Attachmate to resolve the situation, Saks still has refused to pay the required license fees, interest and other damages. Except as explicitly stated, Attachmate denies the allegations in Paragraph 55.

56. Attachmate admits that the audit revealed Saks had installed and provided thousands of devices with access to software without purchasing licenses. Attachmate admits that these actions and other infringed Attachmate's copyrights and breached Saks' agreements with Attachmate, and that after several months of efforts by Attachmate to resolve the situation, Saks still has refused to pay the required license fees, interest and other damages. Except as explicitly stated, Attachmate denies the allegations in Paragraph 55.

57. Attachmate denies the allegations in Paragraph 57.

58. Attachmate denies the allegations in Paragraph 58. Attachmate additionally states that Saks has not alleged a cause of action but instead appears to have stated a potential defense to an anticipated cause of action against Saks.

## THIRD CAUSE OF ACTION

59. Attachmate realleges and incorporates each of its answers to Paragraphs 1 through 58 of the Complaint.

60. Attachmate denies the allegations in Paragraph 60.

61. Attachmate admits the allegations in Paragraph 61.

62. Attachmate admits that Saks offered to purchase additional licenses for the EXTRA! Software, but denies that Saks has offered to purchase enough additional licenses and further denies that Saks has offered to purchase such licenses on acceptable terms. Except as specifically stated, Attachmate denies the allegations in Paragraph 62. Attachmate additionally states that Saks has never offered to fully remedy its breaches of contract.

63. Attachmate admits the allegations in Paragraph 63.

64. Attachmate denies the allegations in Paragraph 64. Attachmate additionally states that Saks has not alleged a cause of action but instead appears to have stated a potential defense to an anticipated cause of action against Saks, and further that Saks, not Attachmate, breached the agreements.

Attachmate denies that Saks is entitled to any of the relief requested and additionally states that Saks has not alleged a Declaratory Judgment Act claim to support the declaratory relief sought, and that Saks is not entitled to any damages or other relief.

## AFFIRMATIVE AND OTHER DEFENSES

A.	The Court may lack jurisdiction over some of the causes of action.

B.	The Complaint is barred, in whole or in part, for failure to state a claim upon which relief can be granted.

C.	The Complaint is barred, in whole or in part, because several of the purported claims asserted by Saks are not causes of action but are instead defenses to anticipated causes of action.

D.	The Complaint is barred, in whole or in part, because Saks breached its agreements with Attachmate.

E.	The Complaint is barred, in whole or in part, because Saks infringed Attachmate's copyrights.

F.	The Complaint is barred, in whole or in part, by the doctrines of estoppel, waiver, laches and/or unclean hands.

G.	Saks' purported damages are barred, in whole or in part, by the terms of its contracts.

H.	To the extent Saks purportedly incurred damages, which it did not, Saks failed to mitigate them.

I.	To the extent Saks purportedly incurred damages, which it did not, the damages would be offset by amounts owed to Attachmate for Saks' breaches of contract and copyright infringement.

WHEREFORE, Attachmate prays for relief as follows:

A.	for judgment in favor of Attachmate and against Saks, dismissing Saks' Complaint with prejudice;

B.      for an award to Attachmate of its attorney's fees and costs pursuant to the parties' contracts, statute, or otherwise according to law or equity; and

C.      for such other relief as the Court deems appropriate.

## COUNTERCLAIMS

Defendant Attachmate Corporation, by and through its attorneys, files the following Counterclaims against Plaintiff Saks Incorporated.

1.      Counterclaim Plaintiff Attachmate Corporation ("Attachmate") is a Washington corporation with its principal place of business in Seattle, Washington.

2.      Upon information and belief, Counterclaim Defendant Saks Incorporated ("Saks") is a Tennessee corporation with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

3.      This civil action arises under the Copyright Act, 17 U.S.C. § 101, *et seq.*, and Washington State common law.  This Court has jurisdiction over the subject matter of these Counterclaims pursuant to 28 U.S.C. § 1331 and § 1338(a) and supplemental jurisdiction over the Washington State claims under 28 U.S.C. § 1367.  This Court also has jurisdiction over these Counterclaims under 28 U.S.C. § 1332 in that there is diversity of citizenship between the parties and the amount in controversy on the Counterclaims exceeds $75,000.

4.      This Court has jurisdiction over Saks because, upon information and belief, Saks resides in New York and has its principal place of business in New York.

5.      Venue in this district is proper pursuant to 38 U.S.C. § 1391(b) & (c) and § 1400(a).

## FACTS

6.      Attachmate Corporation, which merged with WRQ, Inc. in 2005, is a leader in multi-host access, interoperability, and security management software, serves tens of thousands of customers in nearly 60 countries worldwide, and has been doing business since the 1980s.

7. Attachmate has developed and distributed a variety of software products, including the EXTRA! and KEA! families of products ("Attachmate Products"), and continues to develop and distribute various software products.

8. The Attachmate Products at issue are "terminal emulation" products. This technology replaces the need for classic "dumb terminals." Historically, so-called "dumb terminals" provided a direct connection to host systems, but offered no other functionality. For example, an older model of a cash register would be considered a "dumb terminal" that allowed only direct payment transactions, while more extensive account management functionality would be handled using a personal computer or mainframe computer.

9. Emulation software renders "dumb terminals" unnecessary by allowing users of devices to access information and applications on a host system from their personal computing devices. For example, the Attachmate Products allow a licensee's various computing devices to access host applications and perform mission critical functions, such as accessing accounts payable information or manufacturing information.

10. Customers do not purchase Attachmate Products but instead may purchase licenses for Attachmate Products. They purchase licenses directly from Attachmate's sales representatives or indirectly through resellers, in both cases paying a fee for each license.

11. Attachmate sells licenses for specific products. For example, if a customer purchases a license for Reflection for Multi-Host Enterprise Version 14, it cannot install EXTRA! Mainframe Server Edition Version 8 instead (or in addition).

12. Attachmate also sells the licenses by version. For example, if a customer purchases a license for KEA! X Version 4.0, it cannot install KEA! X Version 5.0 instead (or in addition).

13. Attachmate offers and sells its Attachmate Product licenses, upgrade licenses and maintenance contracts based on established price lists.

14. Attachmate generally licenses its software based on the number of devices, rather than the number of users. A device-based license means that the licensee must acquire a license

for each device that has the specific Attachmate Product installed on it or that can access or interact with the Attachmate Product.

15. All the licenses purchased by Saks that are at issue in this lawsuit are device-based licenses.

16. Attachmate's website <*www.attachmate.com*> and the Attachmate Products feature prominent copyright notices.

17. Attachmate has expended considerable effort and expense in developing and promoting the Attachmate Products.

18. As a result of Attachmate's extensive efforts, the Attachmate Products are valuable, proprietary products and the software, its structure, sequence and origin are valuable trade secrets of Attachmate.

19. The Attachmate Products contain material wholly original to Attachmate and consist of copyrightable subject matter under the U.S. Copyright Act of 1976, 17 U.S.C. § 101 *et. seq.*

20. Attachmate owns, among others, the following copyright registrations:  EXTRA! for Windows Version 6.4, Copyright Registration No. TX-4-800-533; EXTRA! Personal Client Version 6.2, Copyright Registration No.  TX-6-924-674, TX-6-781-899; EXTRA! Personal Client Version 6.3, Copyright Registration No. TX-7-439-038; EXTRA! Personal Client Version 6.4, Copyright Registration No. TX-4-810-052; EXTRA! Personal Client Version 6.5, Copyright Registration No. TX-6-876-712, TX-6-781-898; EXTRA! Personal Client Version 6.7, Copyright Registration No. TX-5-717-997; EXTRA! Enterprise 2000 Multi-Host Access, Copyright Registration No. TX-6-845-474; myEXTRA! Enterprise Version 7.0, TX-5-717-996; myEXTRA! Presentation Services Version 7.0, Copyright Registration No. TX-5-717-998; myEXTRA! Presentation Services Version 7.1 (application pending); myEXTRA! Presentation Services (certified) Version 7.11, Copyright Registration No. TX-6-194-759; myEXTRA! Presentation Services (non-certified) Version 7.11, Copyright Registration No. TX-6-194-361;

EXTRA! X-treme Version 8.0, Copyright Registration No. TX-6-190-306;  EXTRA! Mainframe Server Edition v. 8.1, Copyright Registration No. TX 6-117-440;

21. Saks acquired licenses from Attachmate by purchasing fixed numbers of licenses for specific versions of specific Attachmate Products.  According to Attachmate's records, Saks purchased a combined 2361 licenses for the EXTRA! Mainframe Server Edition products, including 446 licenses to Version 8 and 1,915 licenses to Version 8.1.  The licenses to Version 8.1 allowed Saks to deploy either Version 8.0 or Version 8.1 of the EXTRA! Mainframe Server Edition software.

22. At the time Saks installed each copy of each Attachmate Product, Saks was presented with and/or directed to an enclosed hard copy of an End User License Agreement ("EULA") for the version of the specific Attachmate Product it was installing.  Saks had to click to accept and agree to the terms of the EULA each time it installed an Attachmate Product.

23. The EULAs limit the scope of Saks' license rights for each Attachmate Product. For example, the EULA for the EXTRA! Mainframe Server Edition Version 8.0, which is the main product over-deployed by Saks, states that a customer may install the SOFTWARE "on a network server," "_provided_ that you have acquired the Licensed Unit(s) Certificates for the number of Devices that have the ability to access and use, directly or indirectly, the SOFTWARE from such network server."  A representative copy of the EULA, also described in the Complaint as the Attachmate Software License Agreement (ASLA) is attached to the Complaint as Exhibit A.  Although the ASLA attached as Exhibit A to the Complaint is marked "Sample," the text of the license agreement is the same as the license agreement that was presented to and accepted by Saks.

24. Other EULAs employed in connection with Attachmate Products similarly require the purchase one license per deployment.

25. Many of the EULAs, including the EULA for the EXTRA! Mainframe Server Edition Version 8.0, require Saks to implement internal safeguards to prevent unauthorized copying and/or unauthorized access to the Attachmate Products and to track such activities.

26.     The EULAs, including the EULA for the EXTRA! Mainframe Server Edition Version 8.0, provide Attachmate the right to terminate the license rights to Attachmate Products if Saks breaches the terms of the EULAs.  If the rights are terminated, the EULAs require Saks to remove all copies of the Attachmate Products from its systems.

27.     The EULAs, including the EULA for the EXTRA! Mainframe Server Edition Version 8.0, state that if the customer does not agree to the terms, the customer should return the Attachmate Product for a refund.

28.     At no time did Attachmate make licenses or maintenance for Attachmate Products at issue in this litigation available to Saks without any consideration.

29.     Many of the EULAs, including the EULA for the EXTRA! Mainframe Server Edition Version 8.0, provide Attachmate with the right to conduct a verification/audit of the Attachmate Products on Saks' systems.

30.     In or about December 2013, Attachmate invoked its right to verify/audit the Attachmate Products on Saks' computer systems.  Attachmate alerted Saks that it must not alter the computing environment during the review.

31.     A third-party firm, Deloitte & Touche LLP, conducted the audit and obtained data from Saks that showed the types and numbers of Attachmate Products on Saks' computing systems, including the number of devices that could access Attachmate Products through servers.  Deloitte & Touche confirmed the audit process with Saks before conducting the audit.  After the audit, Deloitte & Touche confirmed the data with Saks and then provided the data to Attachmate.

32.     The audit revealed that Saks had configured its systems and devices to allow widespread over-installation and/or over-deployment of, access to and/or use of Attachmate Products including the EXTRA! Mainframe Server Edition Version 8.0.

33.     Attachmate provided Saks with credits for nearly 2000 licenses to the EXTRA! Mainframe Server Edition Version 8.0 as allowed by the licenses purchased by Saks for the EXTRA! Mainframe Server Edition Version 8.1 product.  However, even with the credits, Saks remained grossly out of compliance, with over 3,600 improper deployments of the EXTRA!

Mainframe Server Edition Version 8.0 software.  Saks had failed to remit payment for licenses for the additional deployments.

34. Upon information and belief, Saks failed to implement internal controls on copying, distribution and access to the Attachmate Products as required by the EULAs.

35. Until receiving the audit results, Attachmate was unaware of Saks' improper actions.  At no time prior to the audit did Saks notify Attachmate regarding actions that failed to comply with the EULAs, or Attachmate's intellectual property rights.

36. Saks benefitted from its actions.  Among other things, Saks saved the costs of implementing internal controls, tracking and monitoring access and installations, and it benefitted from the ability to access or use the software from many devices.

37. Nearly nine months after the audit, Saks still has refused to pay the fees due for licenses accepted to bring itself into compliance with the requirements of the EULAs.

38. Saks' ongoing infringement of Attachmate's copyrights and ongoing breaches of its agreements with Attachmate have injured and continue to injure Attachmate.

## COUNTERCLAIM I
## COPYRIGHT INFRINGEMENT

39. Attachmate realleges and incorporates by reference the preceding allegations as though set forth in their entirety.

40. Attachmate is the owner of copyrights in and to the Attachmate Products, and is entitled to bring an action for copyright infringement pursuant to 17 U.S.C. § 101, *et seq.*

41. Saks exceeded the scope of the EULAs offered and accepted by making unauthorized copies, installations and distributions of the Attachmate Products, and such actions infringed and continue to infringe Attachmate's exclusive rights granted by the Copyright Act, 17 U.S.C. § 106.

42. Saks knowingly, willfully and deliberately infringed Attachmate's copyrights in the Attachmate Products and continues to do so.

43. Attachmate suffered and continues to suffer damages as a result of Saks' actions, in an amount to be proven at trial.

44. Attachmate's remedy at law is not itself adequate to compensate Attachmate for injuries inflicted and threatened by Saks.

## COUNTERCLAIM II
## BREACH OF EXPRESS AND IMPLIED CONTRACT

45. Attachmate realleges and incorporates by reference the preceding allegations as though set forth in their entirety.

46. Saks' licenses of Attachmate Products are governed by the EULAs. Each of the contracts is a valid, enforceable, two-party contract.

47. Saks had possession of the Attachmate Products and the embedded EULAs for each of the Attachmate Products. The supply of the Attachmate Products and the license terms constituted an offer by Attachmate to sell a license.

48. By its actions, Saks accepted the terms of Attachmate's offers to sell licenses, creating contracts for which payment was expected.

49. The rights to the Attachmate Products are conferred by and controlled by the contracts and such rights are not within the subject matter of the Copyright Act. Attachmate's right to enforce its contractual rights is not equivalent to the exclusive rights under the Copyright Ac.

50. Saks breached and continues to breach independent covenants in the contracts by failing to pay Attachmate the required license fees for all instances when it provided access through servers, and by installing, accessing, interacting with and/or using the Attachmate Products on devices without paying the required license fees.

51. Saks breached and continues to breach independent covenants in the contracts by failing to monitor or control installation of, access to, interaction with and/or use of the Attachmate Products as required by the EULAs.

52. As a direct and proximate result of these and other express and implied breaches of the contracts, Attachmate suffered and is continuing to suffer damages, in an amount to be determined at trial.

53. Attachmate's remedy at law is not itself adequate to compensate Attachmate for injuries inflicted and threatened by Saks.

## RELIEF

WHEREFORE, Attachmate prays for relief as follows:

A. For judgment in favor of Attachmate Corporation and against Saks Incorporated.

B. For an injunction enjoining and restraining Saks, its officers, directors, agents, employees, representatives, and all persons acting in concert with them, requiring them to (a) remove all infringing copies of Attachmate Products, (b) cease providing devices with access to Attachmate Products for which Saks failed to purchase licenses; and (c) cease engaging in further acts constituting breach of contract.

C. For an award of Attachmate's actual damages for Saks' breaches of contract, including but not limited to lost product licensing fees and maintenance fees, lost profits, and the full benefit of the contracts that Attachmate offered and Saks accepted.

D. For an award of Attachmate's actual damages for Saks' infringement of Attachmate's copyrights, including but not limited to fair market value licensing fees, and an award of all profits received, directly or indirectly, by Saks in connection with each infringement pursuant to 17 U.S.C. § 504(b).

E. For an award of statutory damages in the maximum amount permitted by law pursuant to 17 U.S.C. § 505, the EULAs, or any other basis permitted by law or the equitable powers of the Court.

F. For an award of pre-judgment and post-judgment interest on all applicable amounts.

G.      For an award of Attachmate's costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505, the EULAs, or any other basis permitted by law or the equitable powers of the Court.

H.      Such other and further relief as the Court may deem equitable and proper.

DATED this 21st day of August, 2014.

                    STOKES LAWRENCE, P.S.


By: /s/ Shannon M. Jost
     Shannon M. Jost (NYSBA #2848844)
     1420 Fifth Avenue, Suite 3000
     Seattle, WA 98101
     Tel.: (206) 626-6000
     Fax: (206) 464-1496
     Email: Shannon.Jost@stokeslaw.com

Attorneys for Defendant Attachmate Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2014, I caused the foregoing *Attachmate's Answer, Affirmative and Other Defenses, and Counterclaims* to be:

☒ electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

John M. Callagy
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

Andrea L. Calvaruso
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

Ana Y. Correa
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

/s/ Shannon M. Jost
Shannon M. Jost (NYSBA #2848844, WSBA #32511)
Stokes Lawrence, P.S.
1420 Fifth Avenue, Suite 3000
Seattle, WA  98101
(206) 626-6000
Fax:  (206) 464-1496
shannon.jost@stokeslaw.com

Attorneys for Defendant Attachmate Corporation