UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAKS INCORPORATED,

                   Plaintiff,

         - against -

ATTACHMATE CORPORATION,

                  Defendant.

**OPINION & ORDER**

**14-CV-4902 (CM)(RLE)**

**RONALD L. ELLIS, United States Magistrate Judge:**

## I.    INTRODUCTION

Plaintiff Saks Incorporated commenced this action under the Declaratory Judgment Act on June 30, 2014. (Doc. No. 2) In its Answer filed on August 21, 2014, Defendant Attachmate Corporation raised counterclaims against Saks alleging copyright infringement and breach of express and implied contract. (Doc. No. 11) The action was referred to the undersigned on December 10, 2014, for the resolution of a specific discovery dispute. (Doc. Nos. 17, 22) During a conference held on January 21, 2015, the Court gave Saks leave to make an application for reasonable costs and attorneys' fees associated with Attachmate's discovery misconduct. On January 30, 2015, Saks filed an application seeking an order granting fees of $31,131 and costs in the amount of $336.90. (Doc. No. 62-1 at 5.) For the reasons set forth below, Saks's application is **GRANTED** in the amount of $21,791.70 in attorneys' fees and $336.90 in costs.

## II.    BACKGROUND

Saks served Attachmate with Plaintiff's First Set of Requests for Documents on October 9, 2014. (Doc. No. 62-1) On December 10, 2014, Saks filed a letter informing the Court of several discovery disputes between the Parties. (Doc. No. 24) These disputes included

Attachmate's objection and failure to produce documents in response to Saks's Document Request Number Five: "All Documents and communications concerning any click-wrap license related to the Software." (*Id.*) Attachmate objected to the request as "vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence" and agreed only to produce documents that "relate to Saks' purchase and use of the Software." (Doc. No. 60-1 at 6.) The Court held a telephone conference with the Parties on December 17, 2014. During this conference, the Court told the Parties that in a contract dispute where there is no clear ruling on the language at issue, an exploration of the meaning, interpretation, and language of the contract in the form of depositions, document requests, and requests to admit is proper. The Court directed the Parties to brief their positions on Saks's Request Number Five by the following day.

Having received the Parties' submissions, the Court held a telephone conference on December 18, 2014. During this conference, the Court held that the following were proper areas of inquiry in discovery: 1) any Attachmate contracts which included the "ability to access" language in dispute in this case or similar language; 2) the drafting process and interpretation of any such Attachmate contracts; 3) any disputes between Attachmate and third Parties arising from the "ability to access" language. The Court held that the proper temporal scope for Saks's document request was three years before the filing of this action to the present and ordered Attachmate to produce documents responsive to Saks's request.  In response to Attachmate's concerns that discovery on these topics would be burdensome, the Court directed Attachmate to investigate the existence and availability of documents related to the drafting, interpretation, and enforcement of "ability to access" contracts and report back to the Court.

On December 30, 2014, Attachmate informed the Court that it had conducted a "diligent" investigation" and determined that there were no file or document repositories concerning the drafting or interpretation of the "ability to access" language. (Doc. No. 37 at 2.) Attachmate further stated that its license, sales, compliance and litigation files were organized by client and case, rather than by topic, and that producing relevant documents would require "a manual search of thousands of customer-specific files, a process that would likely take hundreds if not thousands of person hours." (*Id.*) Attachmate then reiterated its prior arguments about the propriety of discovery on the topics the Court addressed at the December 17 conference and asked that any request by Saks for further discovery outside of the license agreements already produced be denied. (*Id.*) Saks responded to Attachmate in a letter dated December 31, 2014, and argued that: 1) the Court had already ruled on the relevance of the documents at issue; and 2) Attachmate had misconstrued and limited the scope of the Court's order by suggesting that it was "only required to search for license agreements that included the exact ["ability to access"] language." (Doc. No. 39 at 3.) Saks further suggested that Attachmate's compliance team could identify relevant disputes with third parties because Saks had already identified ten such customers itself. After offering to limit its requests to reduce Attachmate's burden, Saks asked the Court to direct Attachmate to comply with its prior order. (*Id.* at 4.)

The Court held a conference on January 6, 2015, during which Attachmate again raised the burden of producing the "ability to access" documents previously ordered by the Court. The Court informed Attachmate that to the extent the organization of its files was a barrier to producing the documents the Court ordered, Attachmate would need to provide an affidavit from

a technical person explaining the difficulty in full detail.[1] The Court further expressed its doubt that production would be as difficult as Attachmate alleged, but informed the Parties that if the Court determined Attachmate's characterization of the files was accurate, it would order that Attachmate be precluded from producing such files at trial. After Saks offered to help narrow the scope of the search, the Court agreed that a meet and confer between the Parties was warranted.

On January 9, 2015, Attachmate filed a Motion for a Protective Order Regarding Saks's Request for Production Number Five without permission from the Court and in violation of the Individual Practice Rules of the undersigned. (Doc. No. 43) In this motion, Attachmate reiterated the arguments it had previously raised concerning the relevance and burden of producing the documents ordered by the Court. Attached to the motion was the Declaration of Senior Database Administrator for Attachmate, Richard Counsell. (Doc. No. 46) This affidavit did not meet the Court's specifications and lacked sufficient detail. In a letter dated January 12, 2015, Saks wrote the Court concerning "Attachmate's continued refusal to search for and produce documents" that the Court had ordered and Attachmate's Motion for a Protective Order. (Doc. No. 48 at 1.) Saks asked the Court to order Attachmate "to produce an IT representative at the Court's earliest convenience to explain (1) the steps Attachmate ha[d] taken to search for the Disputed Documents, (2) why none of Saks' suggestions set forth in its January 7 letter [were] feasible, and (3) why Attachmate ha[d] been unable to produce *any* documents responsive to the Court's prior orders." (*Id.* at 3.)

The Court held a conference with the Parties on January 22, 2015. During this conference the Court: 1) Denied Attachmate's Motion for a Protective Order; 2) precluded Attachmate from

---

[1] The Court made clear that any such affidavit could not merely make conclusory statements, but would need to describe the organization of the files and the precise barriers to searching the files for relevant documents.

4

relying on documents at trial that could have been produced in response to Saks's Document Request Number Five; and 3) permitted Saks to file an application for fees and costs related to pursuing documents responsive to its request. Saks filed its fee application on January 30, 2015 (Doc. No. 62) Attachmate filed its opposition on February 2, 2015, and Saks filed a reply on February 3, 2015. (Doc. Nos. 63, 66)

### III.    DISCUSSION

#### A.    Saks's Requested Attorneys' Fees

A Court may impose sanctions against counsel and against a party and counsel pursuant to the Court's inherent authority to manage the cases before it. 28 U.S.C. § 1927 ("§ 1927"); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (holding that a court's inherent power to sanction is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve orderly and disposition of cases"); *accord Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000). Under § 1927, any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

In determining the appropriate amount of attorneys' fees to award, the Court must calculate the "presumptively reasonable fee" by multiplying a reasonable hourly rate by the reasonable number of hours worked. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 117-18 (2d Cir. 2007), *amended on other grounds*, 522 F.3d 182 (2d Cir. 2008). A "reasonable hourly rate is the rate a paying client would be willing to pay." *McDaniel v. County of Schnectady*, 595 F.3d 411, 414 (2d Cir. 2010). The factors relevant to this determination include: "(1) the time and labor required; (2) the novelty and difficulty of

5

the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Arbor Hill*, 493 F.3d at 114 n.3 (internal quotation marks omitted). Furthermore, this Circuit has affirmed the "forum rule," whereby a district court will award fees at the going rate in the district in which the court sits. *Simmons*, 575 F.3d at 174. The burden is on the party seeking attorneys' fees to submit sufficient evidence to support the hours worked and the rates claimed. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

### 1. Saks's Counsel's Hourly Rates

Saks's counsel requests an award of fees based on the following hourly rates:

| | | |
|---|---|---|
| Andrea Calvaruso | Partner, 18 Years of Experience | $450.00 |
| Ana Correa | Associate, 4 Years of Experience | $450.00 |
| Levi Downing | Associate, 4 Years of Experience | $450.00 |
| Jeffery Burandt | Law Clerk, 3 Years of Experience | $180.00 |

These rates are reasonable in light of the prominence of counsel's firm, Kelley Drye and Warren, LLP, as well as the attorneys' respective credentials and years of experience. (Doc. No. 62-1) Attachmate argues that because Saks failed to cite market rates in the legal community, it failed to demonstrate that the rates it requests are reasonable. (Doc. No. 63) This position is meritless. In determining whether a fee is reasonable, "the court may consider rates approved in prior cases and the court's own knowledge of reasonable rates in the district." *Galeana v.*

6

*Lemongrass on Broadway Corp.*, No. 10-CV-7270 (GBD)(MHD), 2014 WL 1364493, at *13

(S.D.N.Y. Apr. 4, 2014) (*citing Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005))

The rates charged by Saks's counsel are within the ranges charged by comparable firms and are

in line with rates that have been approved and awarded in this District.[2] The respective hourly

rates of $450 and $180 are reasonable.

### 2. Hours Expended by Saks's Counsel

Saks's counsel requests an award of fees based on records indicating that a total of 70.5

hours of attorney time were spent addressing Attachmate's discovery misconduct.

| | |
|---|---|
| Andrea Calvaruso | 13.8 hours |
| Ana Correa | 6.7 hours |
| Levi Downing | 47.8 hours |
| Jeffery Burandt | 2.2 hours |

"Applications for fee awards should generally be documented by contemporaneously

created time records that specify, for each attorney, the date, the hours expended, and the nature

of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). If the court

determines that the number of hours expended is excessive, redundant, or otherwise unnecessary,

the court may make reductions to individual entries, or elect to account for such over-billing in

an across-the-board percentage deduction. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 117 (2d

---

[2]See *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10-CV-1853(PGG), 2011 WL 1002439, at *5-6 (S.D.N.Y. Mar. 16, 2011) (approving rate of $761 per hour for partner at Orrick, Herrington & Sutcliffe LLP with 35 years of experience); *Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs .Ltd.*, No. 09-CV-6418 (VM) 665 F. Supp. 2d 434, 437 (S.D.N.Y. Oct. 20, 2009) (approving rates of $735 per hour for partner with over 30 years of experience and $445 per hour for an associate at Bingham McCutchen LLP ); *Therapy Prods., Inc. v. Bissoon*, No. 07-CV-8696, 2010 WL 2404317 at *5 (S.D.N.Y. Mar. 31, 2010) (approving rates of $430 per hour for fourth year associate and $295 per hour for second-year associate at Fish & Richardson P.C. as "commensurate with the rates charged by attorneys in New York"); *LV v. New York City Dept. of Educ.*, No. 03-CV-9917 (RJH), 700 F. Supp. 2d 510, 520 (S.D.N.Y. Mar. 31, 2010) (approving rate of $225-300 per hour for first, second, and third-year associates at Milbank, Tweed, Hadley & McCloy LLP).

Cir. 1997) (citation omitted). In calculating the numbers of reasonable hours, the court looks to "its own familiarity with the case and its experience with the case as well as to the evidentiary submissions and arguments of the parties." *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992).

Saks's counsel worked in opposition to Attachmate's discovery misconduct over the course of approximately one and one-half months: from mid-December to early February. (Doc. No. 62-1) Attachmate argues that Saks's application should be limited to fees incurred in responding to Attachmate's Motion for a Protective Order. The Court's order was not so limited: Saks was given leave to file "an application for the time and expense of pursuing" documents responsive to its request. (Doc. No. 64 at 12.) Thus, the temporal scope of Saks's fee application will not be limited to the briefing of Attachmate's Motion for a Protective Order, but will include all work reasonably performed in opposition to Attachmate's discovery misconduct.

The question remains, however, whether the hours devoted by Saks's counsel over this time period were reasonable. A careful review of counsel's contemporaneous billing records indicates that the hours Saks's counsel expended in opposition to Attachmate's misconduct were excessive. This fee application stems from a fairly simple discovery dispute concerning a failure to produce documents. Although Attachmate's conduct resulted in multiple conferences, letters, and a brief to the Court, the Court finds that the expenditure of three attorneys' and a law clerk's time was duplicative and unnecessary. Furthermore, counsel's records reflect a substantial number of hours spent on researching general legal standards which are not specific to the issues raised in this case. (Doc. No. 62-2) Although the Court finds that a fee award is warranted, routine and educational legal research will not be subsidized. An expenditure of $31,131 in attorneys' fees to address discovery deficiencies, however recalcitrant Attachmate may have been, is exorbitant.

8

Where an applicant's time is "not reasonably necessary to the outcome," the Court

should "reduce the time for which compensation is awarded." *Tucker v. City of New York*, 2010

U.S. Dist. LEXIS 30270, *12-13 (S.D.N.Y. Mar. 9, 2010)(citing *Carey*, 711 F.2d 1136, 1142-43,

1147 (2d Cir. 1983)). The Second Circuit has held that across-the-board percentage reductions

are appropriate where a case is overstaffed, "resulting in needless duplication of work and

retention of unnecessary personnel." *See Lochren v. County of Suffolk*, 344 Fed. Appx. 706, 709

(2d Cir. 2009). Given the relative simplicity of the underlying dispute and the brief period during

which this dispute was ongoing, an across-the-board reduction of 30% is fair and reasonable.

**B.    Saks's Requested Costs**

Saks seeks an award of $336.90 in costs for the transcription of telephone conferences

with the Court on December 17 and 18, 2014. (Doc. No. 62-3) Having reviewed the invoices

Saks provided, the Court finds that Saks reasonably incurred these expenses in opposition to

Attachmate's discovery misconduct.

## IV.    CONCLUSION

For the foregoing reasons, Saks's fee application is **GRANTED** in the amount of

$21791.70 in attorneys' fees and $336.90 in costs. Attachmate and its counsel will be jointly and

severally responsible for paying the fees herein awarded.

**SO ORDERED this 15th day of May 2015**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

9